Harry C. Senft, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 8, 1978, before Judges ROGERS, DiSALLE and CRAIG, sitting as a panel of three.

*Robert C. Sprenkle, Jr.,* for petitioner.

*Elsa Newman,* Assistant Attorney General, with her *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE ROGERS, January 31, 1979:

Harry C. Senft has appealed from a decision of the Unemployment Compensation Board of Review af-

firming a referee's decision denying him unemployment benefits for his asserted wilful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

Senft had worked for American Chain and Cable Company for twenty-one years when he was discharged in the following circumstances. He became ill and consulted his physician who gave him a writing stating the fact of the illness and that "he should be able to return to work August 2, 1976." Senft testified that the doctor told him that, because his illness was largely due to emotional problems, he, Senft, should be the judge of when it would be wise to return to work and that he believed that he had the doctor's allowance to alter the date for his return on the doctor's statement. Senft did not return to work until August 9, 1976 when he submitted the doctor's report altered by him to read: "he should be able to return to work August 9, 1976." The employer learned of the alteration and discharged Senft for making it.

For the reasons hereinafter set forth, we believe that the Board's order denying compensation should be reversed and that the matter should be remanded for additional evidence and further disposition.

The referee made the following finding of fact:

2. Claimant had been ill and produced for his employer the doctor's notice indicating what date he was able to return to work, which date had been altered by the claimant to indicate an additional week of illness *for which the claimant received sick pay.* (Emphasis added.)

The referee attached considerable importance to this finding in forming his conclusion that Senft had com-

mitted an act of wilful misconduct, as the following discussion demonstrates:

The alteration of the doctor's notice in order to receive an additional week of excused absenteeism *for which the claimant would have received sick pay certainly was contrary to the best interests of his employer and clearly falls within the meaning of willful misconduct as set forth in Section 402(e) of the Law.* (Emphasis added.)

The record contains no evidence in support of the finding that Senft did receive or stood to receive sick pay or any other monetary gain as the result of his alteration of the doctor's report. The employer's representative testified as follows:

Q. Mr. Ellenberger, when an employee is absent from the company due to illness, do they receive sick pay from the company for the time they are absent?

A. No. In this particular case as dealing with the salary (inaudible) and in Harry's [Senft's] case in particular due to his years of service he would be entitled to eight weeks of salary continuation per year for illness and this was during a period of salary continuation that this occurred.

The record contains no further description of the employer's provision for salary continuation. We do not know therefore what, if anything, a person eligible to participate in the plan was required to produce as evidence of illness; in short, how, or indeed if, Senft's alteration of the doctor's certificate enabled him to obtain something from his employer to which he was not entitled and thus harmed the employer. Accordingly, we remand the record to the Board for further proceedings related to this point.

### ORDER

AND Now, this 31st day of January, 1979, the record is remanded to the Board of Review for further proceedings consistent with this opinion.